# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY §<br>AS COURT-APPOINTED RECEIVER FOR §<br>THE STANFORD INTERNATIONAL §<br>BANK, LTD., ET AL. and the OFFICIAL §<br>STANFORD INVESTORS COMMITTEE, §<br>§<br>    Plaintiffs, §<br>§<br>v. §<br>§<br>TGC, LLC D/B/A GOLF CHANNEL, §<br>§<br>    Defendant. §<br>§ | Civil Action No. 3:11-CV-00294<br>**JURY DEMANDED** |

## DEFENDANT TGC, LLC D/B/A GOLF CHANNEL'S
## BRIEF IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES

|   |   |
|---|---|
|   | Theodore W. Daniel<br>State Bar No. 05362400<br>tdaniel@fulbright.com<br>Tricia Wisenbaker Macaluso<br>State Bar No. 24013773<br>tmacaluso@fulbright.com |
| OF COUNSEL<br>FULBRIGHT & JAWORSKI LLP | Kyle Schindler<br>State Bar No. 24066033<br>kschindler@fulbright.com |
|   | 2200 Ross Avenue, Suite 2800<br>Dallas, TX  75201-2784<br>Telephone:     (214) 855-8000<br>Facsimile:     (214) 855-8200 |
|   | Counsel for Defendant TGC, LLC D/B/A GOLF CHANNEL |

**TABLE OF CONTENTS**

Page

I.   SUMMARY OF MOTION ................................................................................................ 1
II.  PROCEDURAL BACKGROUND .................................................................................... 3
III. ARGUMENTS AND AUTHORITIES ............................................................................. 7
     A.   Standard for Recovery of Attorneys' Fees ............................................................. 7
     B.   It Is Equitable and Just to Award Golf Channel Attorneys' Fees .......................... 8
     C.   The Fees Sought by Golf Channel Are Reasonable ............................................. 11
     D.   Golf Channel Also Requests Reasonable Fees Incurred For Appeal .................. 13
IV.  PRAYER .......................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arthur Andersen & Co. v. Perry Equip. Corp.*,
   945 S.W.2d 812 (Tex. 1997) ................................................................................. 8, 11, 13

*Janvey v. Democratic Senatorial Campaign Committee*,
   3:10-cv-0346-N (N.D. Tex. July 6, 2011) ..................................................................... 10

*Janvey v. Democratic Senatorial Campaign Committee*,
   3:10-cv-0346-N (N.D. Tex. March 6, 2012) ......................................................... 3, 7, 8, 9, 13

*Metal Bldg. Components, LP v. Raley*,
   2007 WL 74316 (Tex. App. – Austin 2007, no pet.) ......................................................... 8

*U.S. West Commc'ns Inc. (In re Grigonis)*,
   208 B.R. 950, 956 (Bankr. D. Mont. 1997) ..................................................................... 9

**RULES AND STATUTES**

Federal Rule of Civil Procedure 54(d)(2) ........................................................................... 1, 7

Texas Uniform Fraudulent Transfer Act, Chapter 24 of the Texas Business & Commerce
   Code, Section 24.013 ............................................................................................. 1, 4, 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY § <br> AS COURT-APPOINTED RECEIVER FOR § <br> THE STANFORD INTERNATIONAL § <br> BANK, LTD., ET AL. and the OFFICIAL § <br> STANFORD INVESTORS COMMITTEE, § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> TGC, LLC D/B/A GOLF CHANNEL, § <br> § <br> Defendant. § <br> § | Civil Action No. 3:11-CV-00294 <br> **JURY DEMANDED** |

**DEFENDANT TGC, LLC D/B/A GOLF CHANNEL'S
BRIEF IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant TGC, LLC d/b/a Golf Channel ("Golf Channel") hereby files its Brief in Support of Its Motion for Attorneys' Fees (the "Motion") against Plaintiffs Ralph S. Janvey, in his capacity as Court-Appointed Receiver ("Receiver") for The Stanford International Bank, Ltd., et al. ("Stanford") and the Official Stanford Investors Committee ("OSIC") (collectively, "Plaintiffs"), as follows:

**I.
SUMMARY OF MOTION**

Golf Channel seeks to recover its reasonable and necessary attorneys' fees in this matter pursuant to Federal Rule of Civil Procedure 54(d)(2) and the Texas Uniform Fraudulent Transfer Act, Chapter 24 of the Texas Business & Commerce Code ("TUFTA"), Section 24.013. Plaintiffs took a very aggressive and unsupportable position in this lawsuit in their attempt to recover almost $6 million paid to Golf Channel by Stanford for its advertisements on Golf

Channel's cable television network. Plaintiffs sought to avoid the entire $6 million under a theory that a categorical exception under TUFTA applies to Ponzi schemes. According to Plaintiffs, under this supposed exception, an innocent trade vendor like Golf Channel, who sold time on its network to Stanford under an arms' length, market rate contract, must lose as a matter of law on TUFTA's explicit good faith and reasonably equivalent value defense. Plaintiffs' position was and remains unsupported by any statutory language or precedent. As this Court noted when it granted Golf Channel's motion for summary judgment, the logical result of Plaintiffs' position "is of course nonsense," because it would allow a receiver or trustee to recover from any transferee of a Ponzi scheme.

Plaintiffs have asserted similar claims against other trade creditors, whose cases are currently pending. Golf Channel did not file a motion to dismiss Plaintiffs' complaint, but instead resolved this case successfully via summary judgment. In serving as the guinea pig for Plaintiffs' novel theory of recovery, Golf Channel incurred substantial legal fees, and will continue to do so if and when Plaintiffs appeal this Court's final judgment.

An award to Golf Channel of its attorneys' fees would be equitable and just because the Receiver must not have unchecked power to assert novel, unprecedented and ultimately meritless TUFTA claims against innocent trade creditors. Just as the Receiver is empowered by the Court to recover traceable assets that are legally transferrable back to the receivership estate, TUFTA's attorneys' fees provision is a logical check on that power.

Plaintiffs have incurred minimal fees on this case because they took on this case under a contingent fee arrangement with their counsel; meanwhile, Golf Channel has incurred and continues to incur substantial fees defending this lawsuit. If the shoe was on the other foot, the

Receiver would pursue and be awarded its attorneys' fees as it was in the *Democratic Senatorial Campaign Committee* case decided by the Court.

Golf Channel seeks to recover its reasonable and necessary attorneys' fees incurred through October 31, 2013 in the amount of $373,626.50, plus the amount of its reasonable and necessary fees incurred by Golf Channel on and after the Court's November 5, 2013 order granting Golf Channel's motion for summary judgment and final judgment for case analysis and development and work done and to be done in connection with this Motion.  The $373,626.50 amount sought by Golf Channel for its fees through October 31, 2103 is reasonable and necessary under the standards set by the Texas Supreme Court, especially given Golf Channel's victory in this all-or-nothing $6 million lawsuit.  The additional fees incurred in November 2013 and thereafter will also be reasonable and necessary under the applicable standards.  Golf Channel employed reputable and experienced attorneys at customary market rates for a case of this complexity and amount in controversy, and Golf Channel's litigation and discovery strategy was effective and efficient.  The amount sought is also justified because Golf Channel, as first in line in a series of trade creditor lawsuits by Plaintiffs, has borne the brunt of the research and briefing load needed to address the legal aspects of Plaintiffs' theory of recovery.

Golf Channel also seeks a conditional award of appellate attorneys' fees if and when Plaintiffs appeal this Court's judgment to the Fifth Circuit or petition for certiorari in the United States Supreme Court.

## II.
## PROCEDURAL BACKGROUND

On November 5, 2013, this Court granted Golf Channel's motion for summary judgment in its entirety, and entered a final judgment dismissing all of Plaintiff's claims with prejudice. Docket ## 93 and 94.  Plaintiffs filed their Complaint (the "Complaint"; Docket #1) against Golf

Channel on February 15, 2011, seeking to recover approximately $6 million paid by Stanford for the right advertise on Golf Channel's cable television network. Plaintiffs sought to recover such monies under TUFTA, and specifically sought to recover their attorneys' fees under TUFTA § 24.013. This lawsuit is one of nine fraudulent transfer lawsuits filed by Plaintiffs related to Stanford's sports sponsorships and sports related transfers. Appendix ("App") 2 (Declaration of Theodore W. Daniel filed in support of the Motion ("Daniel Decl.") at ¶ 3).

Golf Channel did not file a motion to dismiss or other pre-answer Rule 12 motions, but instead answered the Complaint in April 2011, and then filed a motion for leave to assert counterclaims against Plaintiffs for the recovery of attorneys' fees under TUFTA § 24.013. App. 2 (Daniel Decl. at ¶ 4); Docket # 10. The Receiver opposed the motion (Docket # 11), but the Court ordered that Golf Channel could seek to recover its attorneys' fees should it defeat the Receiver's claims. Docket # 14.

Upon the Court's Order Requiring Status and Scheduling Conference (Docket # 18), the parties conferred and submitted a proposed schedule (Docket # 20), and on August 24, 2012, the Court entered its Scheduling Order and set this case for trial on May 13, 2013. Docket # 23. Earlier in August, Plaintiffs filed their unopposed motion for leave to amend their complaint (Docket # 21), which the Court granted (Docket # 22), whereupon the Amended Complaint was filed. Docket # 24. Golf Channel answered the Amended Complaint on September 24, 2012. Docket # 25. In the ensuing months after the Scheduling Order, the parties made initial disclosures, served written discovery in the form of written interrogatories, document requests and requests for admissions, and responded to such written discovery. App. 3 (Daniel Decl. at ¶ 6). In response to the document requests, Plaintiffs ultimately produced 170,377 pages of documents, and Golf Channel produced 401 pages of documents and some video clips and .jpg

files of still shots related to Stanford's advertising on Golf Channel's network. Golf Channel had some issues with the Receiver's written discovery responses, over which the parties corresponded and conferred. *Id.* at ¶ 6. Golf Channel prepared a motion to compel, but the parties resolved the issues before the motion was filed. *Id*. at ¶ 6. In December 2012, the parties made their expert disclosures, and in January 2013, the parties submitted an agreed form of protective order (Docket # 30), which the Court entered on January 14, 2013 (Docket # 31). *Id.* at ¶ 7.

Depositions commenced in January 2013 and were concluded in early February 2013. App. 4 (Daniel Decl. at ¶ 8). Five (5) depositions were taken by the parties. *Id.* Golf Channel deposed the Receiver and John Little, chairman of the OSIC, in Dallas, Texas. The Receiver and OSIC deposed Tom Knapp of the Golf Channel in Orlando, Florida, and Clark Jones of IMG in Cleveland, Ohio. *Id.* Suzanne Hamm, an ex-employee of Stanford, was also deposed in Memphis, Tennessee. *Id.* Golf Channel's lead counsel alone represented Golf Channel at each of these depositions. *Id.* The Receiver and OSIC had two (2) attorneys at each of these depositions, except for the Clark deposition taken alone by Mr. Buncher. *Id.*

The discovery deadline passed on February 12, 2013, and the parties agreed to extend the deadline for summary judgment motions from February 12, 2013 to February 28, 2013. Docket # 32. On February 28, 2013, Golf Channel filed its motion for summary judgment, brief in support, and appendix in support (Docket ## 33, 34 and 35, respectively), arguing that it was entitled to a take nothing judgment on Plaintiffs' fraudulent transfer claims because as a matter of law it took Stanford's payments in good faith and provided reasonably equivalent value for such payments. On February 28, 2013, Plaintiffs filed their motion for summary judgment, brief in support, and appendix in support (Docket ## 36, 37, and 38 – 61, respectively), arguing that as

a matter of law Golf Channel did not provide reasonably equivalent value for Stanford's payments. In their summary judgment pleadings, Plaintiffs did not argue that Golf Channel did not take the payments in good faith. On March 21, 2013, each party filed their response and supporting appendix to the other party's motion for summary judgment. Docket ## 62, 63, 64, and 65. On April 4, 2013, the parties filed their respective replies on the cross-motions for summary judgment (Docket ## 66 and 67), and Plaintiffs also filed an appendix of new evidence in support of its reply. Docket ##  68 – 77.  Because Plaintiffs filed additional summary judgment evidence with its reply, Golf Channel objected and moved to strike such evidence. Docket # 78.

The Court's Scheduling Order set a trial date for May 13, 2013, with a deadline for pretrial materials on Monday, April 15, 2013. The day after the parties filed their respective responses to the other party's motion for summary judgment, an email exchange between counsel for Golf Channel and counsel for Plaintiffs commenced regarding the April 15 deadline for pretrial materials. App. 5 (Daniel Decl. at ¶ 10). Because Golf Channel's counsel did not believe the Court would be in a position to rule on the cross-motions for summary judgment before the trial date or the April 15 deadline for submission of pre-trial materials, he proposed that the parties submit to the Court a joint motion to continue the trial date and the deadline for pre-trial materials until the Court had ruled on the cross-motions for summary judgment. *Id.* On March 25, 2013, Plaintiffs' counsel informed Golf Channel's counsel that Plaintiffs had decided to "stick with the current schedule." *Id.* As a result, on March 26, 2013, Golf Channel's attorneys began working in earnest on the pretrial materials. Golf Channel filed its pre-trial materials – deposition designations, exhibit list, proposed jury charge, proposed voir dire questions, and witness list (Docket ## 86 – 90, respectively) – on April 15, 2013. Plaintiffs filed

these same materials and a motion in limine on the same day (Docket ## 79 – 82 and 84 – 85)). The parties jointly prepared the Pretrial Order that was filed with the Court on April 15, 2013 (Docket # 83).  App. 5 (Daniel Decl. ¶ 10).  Under the Scheduling Order, Golf Channel's objections to Plaintiffs' pre-trial materials were due on April 29, 2013, so Golf Channel immediately commenced working on its objections.  *Id.*

On April 29, 2013, before Golf Channel's objections to Plaintiffs' pre-trial materials were filed, the Court entered its order staying all matters in this case pending the Court's resolution of the parties' cross-motions for summary judgment.  Docket # 92.  Under its Order, dated November 5, 2013 (the "Summary Judgment Order"), the Court granted Golf Channel's motion for summary judgment and denied Plaintiffs' motion for summary judgment.  Docket # 93.  That same day, the Court entered a final judgment ordering that the Receiver take nothing on its claims against Golf Channel and taxing court costs in favor of Golf Channel against the Receiver.  Docket # 94.

### III.
### ARGUMENTS AND AUTHORITIES

**A.     STANDARD FOR RECOVERY OF ATTORNEYS' FEES**

"In any proceeding under [TUFTA], the court may award costs and attorney's fees as are equitable and just."  Tex. Bus. & Comm. Code § 24.013.  Further, as this Court recently held in another TUFTA claim asserted by the Receiver against various political campaign committees (the "Political Committees"), the Court's final judgment on the merits does not preclude a post-judgment Rule 54(d)(2) motion for attorneys' fees, which is collateral to the main cause of action and uniquely separable from the cause of action to be proved at trial, and at the very least, a motion to supplement the award of costs in the Court's final judgment.  *Janvey v. Democratic Senatorial Campaign Committee*, 3:10-cv-0346-N (N.D. Tex. March 6, 2012) (Docket # 140 at

p. 2 fn.1 (citations omitted)). In fact, the Court awarded the Receiver its attorneys' fees as equitable and just after the Receiver prevailed on its motion for summary judgment. *Id.* at p. 7. And in that case, the Receiver was awarded the entirety of the $369,783.37 "lodestar" amount.

In determining whether the fees sought were reasonable and necessary, this Court considered the following factors: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the attorneys have rendered the legal services. *Janvey v. Democratic Senatorial Campaign Committee*, 3:10-cv-0346-N (N.D. Tex. March 6, 2012) (Docket # 140) (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) and *Metal Bldg. Components, LP v. Raley*, 2007 WL 74316, at *16 (Tex. App. – Austin 2007, no pet.)).

B.   **IT IS EQUITABLE AND JUST TO AWARD GOLF CHANNEL ATTORNEYS' FEES**

The specific circumstances surrounding this lawsuit justify awarding Golf Channel its attorneys' fees. Plaintiffs' claim against Golf Channel was a stretch. Plaintiffs did not dispute that Golf Channel negotiated its written contract with Stanford at "arms' length, in good faith, at fair market value, and in the ordinary course of business." Summary Judgment Order at pp. 6, 13 n.6. Instead, Plaintiffs advanced a novel and aggressive theory that a categorical "public policy" exception to the explicit affirmative defense available under TUFTA applied to all Ponzi

scheme cases that automatically precluded the provision of "value," regardless of the trade creditor's good faith or reasonable equivalence of the exchange.

Plaintiffs' application of this supposed exception to trade creditors was unprecedented. Plaintiffs did not and could not cite to any prior case where a trustee or receiver ever sought to recover transfers from an innocent trade creditor like Golf Channel merely because the creditor unknowingly conducted its ordinary business with a Ponzi scheme. As the Court noted, the logical result of Plaintiffs' theory of recovery would permit fraudulent transfer claims against any transferee, including utility companies, and "[t]his result of course is nonsense." Summary Judgment Order at p. 12 (citing *U.S. West Commc'ns Inc. (In re Grigonis)*, 208 B.R. 950, 956 (Bankr. D. Mont. 1997).

This Court has previously awarded attorneys' fees to the Receiver when it prevailed on its TUFTA claims against the Political Committees. *Janvey v. Democratic Senatorial Campaign Committee*, 3:10-cv-0346-N (N.D. Tex. March 6, 2012) (Order, Docket # 140). The TUFTA attorneys' fee provision is party-neutral, and fees are available to any party when such an award is equitable and just. TUFTA attorneys' fee provision exists to check precisely the type of overly aggressive litigation behavior Plaintiffs exhibited in pursuing the claims against Golf Channel.

The Court vested the Receiver with "full power of an equity receiver under common law as well as such powers enumerated" in the Receivership Order with the "ultimate goal . . . to maximize the assets of the Receivership Estate in order to distribute as much money as possible to the defrauded investors of the Stanford Ponzi scheme." *Janvey v. Democratic Senatorial Campaign Committee*, 3:10-cv-0346-N (N.D. Tex. March 6, 2012) (Order, Docket # 140 at p. 4); *see also* Summary Judgment Order (Docket #93) at p. 2. With great power comes great

responsibility. The Receiver chose a litigation strategy that contemplated the pursuit of every Stanford transferee, including a large group of trade creditors who merely sold Stanford sponsorships in the ordinary course of their completely unrelated businesses. Plaintiffs asserted an all-or-nothing argument that each of these transfers should be avoided in their entirety under the supposed – yet uncodified and unprecedented – "public policy" exception to TUFTA's explicit good faith/reasonably equivalent value affirmative defense.

In its prior efforts to recover its attorneys' fees from the Political Committees, the Receiver emphasized that the "the Political Committees' strategy to litigate every conceivable issue in the case, irrespective of the merits of doing so, justifies awarding the Receiver his reasonable and necessary attorneys' fees." *Janvey v. Democratic Senatorial Campaign Committee*, 3:10-cv-0346-N (N.D. Tex. July 6, 2011) (Brief in Support of Receivers' Motion for Attorneys' Fees, Docket # 113-1 at p. 7). Similarly, Plaintiff's strategy to litigate against every conceivable transferee, irrespective of the merits, justifies awarding Golf Channel its attorneys' fees. Rather than fulfill his duty to recover assets that are legally transferrable back to the Receivership estate, the Receiver inflicted substantial and unnecessary costs on another class of creditors.

Unlike the Receiver's claims against the Political Committees, wherein Baker Botts L.L.P. handled the lawsuit and charged the Receivership hourly rates for seven of its attorneys, two of its paralegals, and Mr. Janvey himself, the case against Golf Channel was handled primarily by OSIC's counsel, Neligan Foley LLP, on a contingent fee basis.[1] App. 122-128 (Janvey Dep. at 4:20-6:12, 49:18-52:8); App. 132-135 (Little Dep. at 7:6-10:21). Thus, while Golf Channel has incurred substantial costs in defending this lawsuit, Plaintiffs appear to have

---

[1] In the Receiver's words, Neligan Foley LLP is "taking a lead on certain cases," including the lawsuit against Golf Channel. App 124 (Janvey Dep. at 6:4-12).

taken a "flyer" on its claims against Golf Channel with little consideration for litigation costs or the likelihood of success.

Finally, Golf Channel has borne the brunt of defending Plaintiffs' unprecedented and meritless TUFTA theory, and will continue to do so if and when Plaintiffs appeal the final judgment in this case. Because Golf Channel did not file a Rule 12(b)(6) motion to dismiss, this case became the test case on Plaintiffs' argument for a categorical exception to the TUFTA affirmative defense. As a result, Golf Channel incurred substantial fees for original research and briefing on legal issues that will likely apply to the other pending trade creditor cases that have yet to enter a discovery period and are awaiting the outcome of this lawsuit against Golf Channel.

## C. THE FEES SOUGHT BY GOLF CHANNEL ARE REASONABLE

Golf Channel seeks to recover $373,626.50 in fees incurred through October 31 2013, plus fees necessarily incurred for (a) reviewing the Court's summary judgment order and final judgment entered on November 5, 2013, (b) communicating with Golf Channel regarding these rulings and next steps, (c) communicating with the Receiver's attorneys regarding the issue of fees, (d) preparing Golf Channel's motion for fees and this Declaration, (e) reviewing the Receiver's anticipated opposition to the motion for fees, and (f) preparing an anticipated reply, to be supplemented after this Motion is fully briefed. App. 8-10 (Daniel Decl. at ¶¶ 15-18). The amount sought is equitable and just under the lodestar for Golf Channel's representation by Fulbright & Jaworski LLP ("Fulbright") in this matter. App. 8-9 (Daniel Decl. at ¶¶ 15-17). Under the *Arthur Anderson & Co.* factors to be considered by the Court, particularly factors (1), (3), (4), and (7), the amount of fees sought by Golf Channel is reasonable and necessary. *Arthur Anderson & Co.*, 945 S.W.2d at 818.

Under factor (1), the time and labor required by Golf Channel's attorneys was reasonable and necessary, given the complexity of the case, the amount in controversy, and the legal issues involved. Plaintiffs sought to recover $6 million under an all-or-nothing theory of recovery, so the stakes were high for all parties. Because Golf Channel did not pursue a Rule 12(b)(6) motion to dismiss, it was the first trade creditor sued by Plaintiffs to conduct discovery, and have dispositive motion deadlines and a trial date. As the guinea pig for Plaintiffs' novel legal claim, Golf Channel necessarily incurred substantial fees for original legal research and summary judgment briefing. Golf Channel also had to respond to Plaintiffs' competing motion for summary judgment.

Golf Channel defended the case with appropriate vigor, and it was judicious in its approach to discovery, given the amount in controversy and novelty of the legal issues involved. Golf Channel privately resolved a discovery dispute with Plaintiffs without need for the Court's involvement. App. 3 (Daniel Decl. at ¶ 6). Golf Channel's discovery requests were reasonably tailored to the issues of the lawsuit, and its document collection and response to Plaintiffs' discovery requests were similarly efficient. Only five (5) witnesses were deposed. App. __ (Daniel Decl. at ¶ 8). The Receiver and the chairman of OSIC were deposed in Dallas. Golf Channel prepared and defended its own witness, Tom Knapp, in Orlando, Florida. *Id.* Ex-Stanford employee Suzanne Hamm was deposed in Memphis, Tennessee, and Plaintiffs deposed IMG witness Clark Jones in Cleveland, Ohio. *Id.*

Under factors (3) and (7), Fulbright's fees, including those of the specific attorneys assigned to the case, are reasonable in this market and Fulbright's experience, reputation and ability justify those fees, including the specific attorneys and paralegal assigned to the case. App. 1, 6-8 (Daniel Decl. at ¶¶ 2, 13, 17). The rates charged in this matter were substantially

discounted for each of the Fulbright attorneys and the paralegal assigned to the matter. App. 10 (Daniel Decl. at ¶ 21). In fact, Fulbright's lodestar amount in this case is comparable in amount to the lodestar awarded to the Receiver in his action against the Political Committees, even though there was little, if any, work on pre-trial materials in that case unlike this case. *Janvey v. Democratic Senatorial Campaign Committee*, 3:10-cv-0346-N (N.D. Tex. March 6, 2012) (Order, Docket # 140) at pp 4-5 (approving lodestar amount of $369,783.37 as reasonable); App. 5 (Daniel Decl. ¶ 10).

Under factor (4), Golf Channel obtained a take nothing judgment and dismissal of all claims with prejudice on a matter where Plaintiffs were seeking $6 million in compensatory damages, interest, attorneys' fees and court costs. Compared to the amount sought and the total victory obtained, the $373,626.50 lodestar is reasonable. *Arthur Anderson & Co.*, 945 S.W.2d at 818.

### D. GOLF CHANNEL ALSO REQUESTS REASONABLE FEES INCURRED FOR APPEAL

Golf Channel further requests that the Court award it fees necessarily incurred in defending this matter if and when Plaintiffs appeal the final judgment in this case. To that end, Golf Channel expects that the necessary fees to defend the appeal of this case would include: $85,000 if Plaintiffs appeal this Court's judgment to the Fifth Circuit Court of Appeals; an additional $100,000 should the Plaintiffs petition for writ of certiorari in the United States Supreme Court and Golf Channel is requested to file a response; and an additional $125,000 if that Court grants certiorari. App. 11 (Daniel Decl. ¶ 23).

# IV.
# PRAYER

WHEREFORE, PREMISES CONSIDERED, Golf Channel respectfully requests that its Motion for Attorneys' Fees be in all things granted and such other relief to which it may show itself justly entitled.

                                      Respectfully submitted,

                                      */s/Theodore W. Daniel*
                                          Theodore W. Daniel
                                          State Bar No.  05362400
                                          tdaniel@fulbright.com
                                          Tricia Wisenbaker Macaluso
                                          State Bar No.  24013773
                                          tmacaluso@fulbright.com
                                          Kyle Schindler
                                          State Bar No.  24066033
                                          kschindler@fulbright.com

OF COUNSEL
FULBRIGHT & JAWORSKI LLP

                                      2200 Ross Avenue, Suite 2800
                                      Dallas, TX  75201-2784
                                      Telephone:     (214) 855-8000
                                      Facsimile:      (214) 855-8200

                                      Counsel for Defendant TGC, LLC D/B/A
                                      GOLF CHANNEL

**CERTIFICATE OF SERVICE**

       I hereby certify that on November 19, 2013, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

| | |
|---|---|
| Nicholas A. Foley<br>Douglas J. Buncher<br>Neligan Foley, LLP<br>325 N. St. Paul, Suite 3600<br>Dallas, Texas 75201<br>Telephone: 214-840-5320<br>Facsimile: 214-840-5301<br>nfoley@neliganlaw.com<br>dbuncher@neliganlaw.com | ATTORNEYS FOR THE OFFICIAL<br>STANFORD INVESTORS' COMMITTEE |
| Kevin M. Sadler<br>Robert I Howell<br>David T. Arlington<br>BAKER BOTTS L.L.P.<br>1500 San Jacinto Center<br>98 San Jacinto Blvd.<br>Austin, Texas 78701-4039<br>Telephone: 512-322-2500<br>Facsimile: 512-322-2501<br>kevin.sadler@bakerbotts.com<br>robert.howell@bakerbotts.com<br>david.arlington@bakerbotts.com | ATTORNEYS FOR RECEIVER<br>RALPH S. JANVEY |
| Timothy S. Durst<br>BAKER BOTTS L.L.P.<br>2001 Ross Avenue<br>Dallas, Texas 75201<br>Telephone: 214-953-6500<br>Facsimile: 214-953-6503<br>tim.durst@bakerbotts.com | ATTORNEYS FOR RECEIVER<br>RALPH S. JANVEY |
| Peter D. Morgenstern<br>BUTZEL LONG<br>22nd Floor<br>380 Madison Ave.<br>New York, New York 10017<br>Telephone: 212-374-5379<br>morgenstern@butzel.com | ATTORNEYS FOR THE OFFICIAL<br>STANFORD INVESTORS COMMITTEE |

| | |
|---|---|
| Edward C. Synder<br>CASTILLO SNYDER, P.C.<br>Bank of America Plaza, Suite 1020<br>300 Convent Street<br>San Antonio, Texas 78205<br>Telephone: 210-630-4200<br>Facsimile: 210-630-4210<br>esnyder@casnlaw.com | ATTORNEYS FOR THE OFFICIAL<br>STANFORD INVESTORS COMMITTEE |
| Edward F. Valdespino<br>STRASBURGER & PRICE, LLP<br>300 Convent St., Suite 900<br>San Antonio, Texas 78205<br>Telephone: 210-250-6061<br>Facsimile: 210-258-2703<br>Edward.valdespino@strasburger.com | ATTORNEYS FOR THE OFFICIAL<br>STANFORD INVESTORS COMMITTEE |

*/s/Theodore W. Daniel*
  Theodore W. Daniel